Pearson, J.
 

 The verbiage, useless averment, and vain repetitions used in many of the forms of indictments, have become the subject of just remark, as tending to produce prolixity and confusion, instead of certainty, These excrescenses have croeped in, because most draftsmen, under cover of the maxim,
 
 uttíeper mutile non
 
 vitiatior, out of abundant caution, will use a word, make an averment, or a repetition, without stopping to decide upon its materiality, under the idea that, if it does no good, it will do no harm.
 

 The solicitor, who drew the indictment, in
 
 State
 
 v.
 
 Fish,
 
 4 Ire. Rep. 219, from which the present indictment was taken, seems to have made an experiment, to see how many of the averments, in the usual form of an indictment for “ cheating by false tokens” could be dispensed with. The question is, whether he has left enough, or has trimmed too close.
 

 Fish’s case went off upon another point, and it did not become necessary to pass upon the sufficiency of the indictment ; consequently it has no bearing, as an authority, on the present question, except to the extent of showing that the departure from the usual form, was not so clearly liable to objection as to induce the Court to remark upon it, to prevent its being followed as a precedent.
 

 Several objections are now made to it:
 

 1st. There is no averment as to the sort of a quarter of a dollar that the false token was made to counterfeit — whether metal or paper — Spanish milled, or Mexicau — or a twenty-five cent piece of United States coin.
 

 The averment is unnecessary. It was not material to ascertain the sort of money which the false token was made to counterfeit — the defendant’s guilt in nowise depending on it,
 
 *466
 
 and the general averment, that it was a counterfeit quarter of a dollar, made the charge with sufficient certainty, to apprise the defendant of the specific act, for which he was then indicted, and to enable him, should he be so unfortunate as to fail in his defense, to plead his conviction in bar of a second prosecution. In 3 Bos. and Pul. 145, a case is cited by one of the Judges, in which a man was indicted for stealing
 
 a Binóte,
 
 without adding any further description, and the indictment was considered sufficient, notwithstanding the generality of the description. In
 
 State
 
 v.
 
 Rout,
 
 3 Hawks’ Rep. 618, an indictment for stealing
 
 one twenty dollar bank note on the State bank of North Carolina,
 
 was held sufficient, notwithstanding the description was general, and was erroneous in one particular, i. e., the name of the bank. The Court say, “ A note on the State bank is as intelligible, as a note issued by the bank, and would be understood, in common acceptation, in the same sense; for it is a familiar mode of speech to say
 
 a note on a man,
 
 and is understood as a note drawn by a man.” So, a quarter of a dollar is a familiar mode of speech, and is understood, in common acceptation, to mean a coin of a certain value; whether it be a quarter of a Spanish mill, of of a Mexican dollar, or a twenty-five cent piece of United States’ coin, we have seen, is not material.
 

 2nd. There is no averment that the false token was made like a quarter of a dollar, or had so much the appearance of one, as was calculated to deceive an ordinary person.
 

 It is averred to be a
 
 counterfeit
 
 quarter of a dollar. The word “ counterfeit”
 
 ex vi termini,
 
 means a thing made
 
 to
 
 have the resemblance of some other thing. Whether the resemblance be close or not, depends upon the skill of the maker ; but it cannot, with propriety, be called a counterfeit, unless it have so much likeness of the originial as is calculated to deceive. All the verbiage used to express the many shades of the same idea, cannot, on paper, make it clearer than the averment that it was a
 
 cowvterfeit.
 
 If, upon the trial, the false token produced in evidence, did not look like a quarter of a dollar, or was not so much like it, as to show that it was made with
 
 *467
 
 an intent that it should be like it, or if the attempt to make a counterfeit, had been'so unsucessful, that the thing “was not calculated to impose upon the credulity of ordinary men,”
 
 (State
 
 v.
 
 Simpson,
 
 3 Hawks’ 620 ;
 
 State
 
 v.
 
 Patillo,
 
 4 Hawks’ 348,) for instance, if it was a brass, or pewter button, or round piece of metal, without any of the devices impressed on coin, it was the duty of the Judge to instruct the jury, that the variance between the allegation and the proof was fatal, and that the thing produced did not support the averment that it was a counterfeit quarter of a dollar.
 

 3rd. There is no averment that the counterfeit quarter of a dollar was passed, or delivered by the defendant, to Mary Wilhite, so as to show
 
 how
 
 he obtained the gingerbread by means thereof.
 

 The averment, that he obtained the gingerbread by means of this false token, necessarily imports that he passed, or delivered it to her, because, that is the only mode in which lie could have obtained it by means of the counterfeit quarter of a dollar, and such is the ordinary acceptation in which the words are understood. It is trifling to say that, he might have obtained the gingerbread by telling her he had so valu. able an article, or by showing it to her, or by jingling it, so as to let her hear the sound thereof. This objection, besides, is fully met by the fact, that the averment is in the precise words of the statute.
 

 4th. There is no averment of the value of this particular piece of gingerbread, or that it was of any value.
 

 In an indictment for larceny, it is necessary to aver the value of the article stolen, in order to distinguish between grand, and petit larceny; so the value of the instrument, by which a homicide is committed, is averred, becauseit is forfeited as a deodand; but no reason can be suggested why the value of this piece of gingerbread should be averred. It makes no more difference whether it was worth five cents, or five dollars, than it does whether it was a large, or a small piece; nor ivas it necessary to aver that it was of any value, for it ivas an article of property, and every tiling which the law recognizes as property,
 
 *468
 
 is presumed to be of some value.
 
 Dodson
 
 v. March, 4 Dev. and Bat. Rep. 146. This is assumed in tbe statute, under which the indictment is drawn: “ any money, property, or
 
 other
 
 thing, of value.”
 

 5th. There is no averment, that the gingerbread was the ' property of Mary "Wilhite.
 

 The indictment avers that the defendant obtained the gingerbread from her, with an intent to cheat and defraud her. She could not be defrauded, nor could this averment be proven, unless the gingerbread was her property. For this reason, we consider the objection met by the averment. In an indictment for larceny, it is necessary to aver the ownership of the article stolen, for if the charge was “ a piece of gingerbread, then and there being found, feloniously did steal, &c., without averring to whom it belonged, the party might be again indicted for stealing a piece of gingerbread, and there would be no means of deciding whether it was the same piece of gingerbread or not, because there is nothing to identify it. But in an indictment for obtaining, by a false token, the averment of an intent to cheat, and defraud, a particular individual out of the piece of gingerbread, does identify it, and secures the same certainty as the averment in an indictment for larceny that the article is the property of a particular individual, and affords an equal protection against another indictment.
 

 The counsel, for the defendant, relies upon
 
 Norton's
 
 case in in 8th Carrington and Payne, 196. The case was upon 7 and 8, Geo. 4 ch. 29, and is referred to in Roscoo’s Crim. Ev. 428. The reports of Carrington and Payne, are not within our reach, except so much as is contained in the Eng. Com. L. Rep. Unfortunately, Norton’s case is not reported at large; only the head note is given, 34 E. C. L. R. 350. “An indictment, under 7 and 8 Geo. 4, ch. 8, for obtaining money under false pretences, is not good, unless, in addition to the false pretence,
 
 it contain
 
 the
 
 requisites
 
 of
 
 a count for
 
 larceny, and if it do not allege the money obtained to be the property of any person, it vdll not bo sufficient,-inasmuch as it could not in that state be pleaded as
 
 a bar to a subsequent indictment for
 
 larceny,
 
 *469
 
 wliich it is made by the proviso in the 53 section. ” The statute, besides the proviso, that if, upon the trial, it shall be proved, that the defendant obtained the property, in such a manner as to amount in law to a larceny,- he shall not, by reason thereof, be entitled to an acquittal of such misdemeanor, contains a further proviso, that “ no person, tried for such misdemeanor, shall be liable to be afterwards prosecuted for larceny, upon the same facts.” The decision in Norton’s case, it seems, was put upon this latter proviso, which is not contained in our statute, although the first is. Consequently, that case is not in point. But wé regret it is not in our power to examine it. For the proposition in the head note, that inasmuch as the proviso makes the proceeding for a misdemeanor, a bar to a subsequent indictment for larceny, therefore, the indictment for the misdemeanor, must contain all the requisites of a count for larceny, is clearly a
 
 non sequitur.
 

 After a full consideration of the question, we have, for the reasons above stated, arrived at the conclusion that the averment of an intent to cheat, and defraud a particular individual, supersedes the necessity of a direct averment, that the article is the property of that individual, and that an indictment, under our statute, is distinguishable in this respect, very clearly, from an indictment for larceny.
 

 At all events, we are satisfied that this defect, if it be one, comes within the provision of the statute, ch. 35, sec. 14, Eev. Code, “No indictment shall be quashed, or the judgment, thereon stayed, by reason of any informality or refinement, if in the bill, sufficient matter appears to enable the Court to proceed to judgment.”
 

 There is no error in overruling the motion to arrest.
 

 Per CukiaM. Judgment affirmed.