## GRIGGS v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. February 3, 1908.)

### No. 1,441.

1. INDICTMENT—SUFFICIENCY OF ACCUSATION—PLACE OF OFFENSE — ALASKA STATUTE.

By Act June 6, 1900, c. 786, § 4, 31 Stat. 322, establishing a district court for the district of Alaska and dividing such district into three divisions, the court in each division is given jurisdiction throughout the district, and an indictment returned in either division is not defective because it fails to charge that the offense was committed in that particular division.

2. FALSE PRETENSES—INDICTMENT — ALLEGING VALUE OR DESCRIPTION OF MONEY.

In an indictment for obtaining money by false pretenses, where the amount of money so obtained is alleged, it is not essential to set forth its description or allege its value.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, False Pretenses, § 44.]

3. SAME—OWNERSHIP OF MONEY OBTAINED.

Under the statutes of Alaska, and especially sections 45, 49, and 50, of the Criminal Code (chapter 429, 30 Stat. 1290), which require defects in form in indictments which do not tend to prejudice the substantial rights of the defendant to be disregarded, an indictment for obtaining money by false pretense is sufficient, although it does not state the ownership of the money by direct allegation, if facts are alleged which sufficiently show the ownership, as where it alleges that the false pretenses were made with intent to defraud a person named of a certain sum of money, and that, relying thereon, he paid such sum to defendants.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, False Pretenses, § 44.]

4. JURY—COMPETENCY OF JURORS—FORMATION AND EXPRESSION OF OPINION.

One is not incompetent as a juror in a criminal case merely because he has formed and expressed an opinion as to the guilt or innocence of a person jointly indicted with the defendant on trial.

**5. CRIMINAL LAW—EVIDENCE—OTHER OFFENSES—ACTS PART OF SERIES.**

On the trial of a defendant jointly charged with another with obtaining money by false pretenses, where it appeared that the false pretenses charged were made by such other, evidence was admissible to show that they were so made pursuant to a general scheme entered into between him and defendant to defraud by the use of false representations of a discovery of gold and the sale of interests in fictitious mining claims, that they had previously jointly so obtained money from others, that defendant himself had made such representations to others, and that the interest sold to the person charged to have been defrauded was conveyed under a power of attorney from defendant; such evidence tending directly to prove defendant guilty of the crime charged.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, §§ 833, 834.]

**6. FALSE PRETENSES—PERSONS LIABLE.**

The fact that one of two or more persons who obtain property by false pretenses received no share of the property is no defense to an indictment against him for the offense.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, False Pretenses, § 28.]

**7. SAME—CHARACTER OF FALSE REPRESENTATION—QUESTION FOR JURY.**

Under an indictment for obtaining money by false pretenses, it is a question for the jury, not whether the false representation made was calculated to deceive a prudent person, but whether it was calculated to deceive the person to whom it was made.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, False Pretenses, § 63.]

**8. CRIMINAL LAW—INSTRUCTIONS—DEFINING REASONABLE DOUBT.**

An instruction in a criminal case, which defines reasonable doubt as "a doubt which must arise from the evidence, or lack of evidence, and for which some reason can be given," while not to be approved, does not constitute reversible error.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, §§ 1906–1922.]

Ross, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Second Division of the District of Alaska.

W. H. Bard and James E. Fenton, for plaintiff in error.

George B. Grigsby and Jno. J. Reagan, for the United States.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge. The plaintiff in error was jointly charged with one Duncan of the crime of obtaining money by false pretenses. The indictment set forth the false pretenses, alleged that they were made with the intention to defraud F. T. Merritt and obtain from him the sum of $875, and that, relying upon the same, said Merritt then and there paid to the said Duncan and the plaintiff in error the sum of $875; and the indictment proceeded to set forth the falseness of the pretenses. The plaintiff in error was tried separately, and was convicted. It is assigned as error that the court overruled a demurrer to the indictment and a motion in arrest of judgment, by both of which the indictment was questioned on three grounds: First, that it does not allege that the offense charged was committed in the Second division of the district of Alaska; second, that it does not allege the value or description of the money so ob-

tained; and, third, that it does not aver that the money alleged to have been obtained on the false pretenses was the property of Merritt.

As to the first objection, we find that in Act June 6, 1900, c. 786, § 4, 31 Stat. 322, it is provided as follows:

"There is hereby established a district court for the district, which shall be a court of general jurisdiction in civil, criminal, equity and admiralty cases, and three district judges shall be appointed for the district, who shall, during their terms of office, reside in the division of the district to which they may respectively be appointed by the President. The court shall consist of three divisions. The judge designated to preside over division numbered one, shall, during his term of office, reside at Juneau," etc.

Section 5 provides:

"The jurisdiction of each division of the court shall extend over the district of Alaska, but the court in which the action is pending, may, on motion, change the place of trial in any action, civil or criminal, from one place to another place in the same division, or to a designated place in another division in either of the following cases," etc.

In Act March 3, 1899, c. 429, 30 Stat. 1286, section 13, subc. 5, provides:

"That the grand jury have power, and it is their duty, to inquire into all crimes committed or triable within the jurisdiction of the court, and present them to the court, either by presentment or indictment as provided in this act."

And section 10 of subchapter 4, provides:

"That but one grand jury shall be summoned in each division of the court to inquire into all offenses committed or triable within said district."

From these provisions it appears that it was the intention of Congress to give to each division of the court jurisdiction over the whole district; and, such being the construction of the law, an indictment is not defective if it fail to allege that the offense charged was committed within the particular division of the court in which it is found.

Nor do we find merit in the second objection to the indictment. Money itself, being a measure of value, cannot be rendered more definite by an averment of its value. State v. Kube, 20 Wis. 217, 91 Am. Dec. 390; Oliver v. State, 37 Ala. 134; People v. Millan, 106 Cal. 320, 39 Pac. 605. And while there are decisions which hold that the kind, character, or denomination of the money obtained shall be set forth in the indictment, the tendency of the more modern decisions is to dispense with the rule, technical as it is, and unsupported by sound reason or common sense. Commonwealth v. Lincoln, 11 Allen, 233; State v. Knowlton, 11 Wash. 512, 39 Pac. 966; State v. Reese, 83 N. C. 637; Oliver v. The State, 37 Ala. 134.

A more serious objection is that the indictment contains no direct allegation as to the ownership of the money obtained. Numerous authorities hold that a direct allegation of that nature is essential. The reason assigned for such a rule is that, without such allegation and proof, the defendant may again be indicted for the same offense. Following the common-law rule as laid down in Norton's Case, in 8 Car. & P. 196, holding that an indictment under St. 7 & 8 Geo. IV, c. 8, for obtaining money under false pretenses, is not good unless,

in addition to the false pretenses, it contain the requisites of a count for larceny, and that, if it do not allege the money obtained to be the property of any person:

"It will not be sufficient, inasmuch as it could not in that state be pleaded as a bar to a subsequent indictment for larceny, which it is made by the proviso in the fifty-third section."

But that reason has no foundation in fact when applied to an indictment for obtaining money under false pretenses as that offense is defined in the Alaska statute. The gist of the offense is the use of the false pretenses to obtain the money or property of another, and the crime is not in terms made larceny. The indictment in the present case contains all the elements of the offense as it is defined in the statute. Not only is this so, but it is provided in section 45 (30 Stat. 1290):

"That when a crime involves the commission of, or an attempt to commit a private injury and is described with sufficient certainty in other respects to identify the act, an erroneous allegation as to the person injured or intended to be injured is not material."

Section 49 provides that the indictment shall be sufficient if it can be understood therefrom:

"That the act or omission charged as a crime is clearly and distinctly set forth in ordinary and concise language without repetition, and in such a manner as to enable a person of common understanding to know what is intended."

And section 50 provides:

"That no indictment is insufficient, nor can the trial, judgment or other proceedings thereon be affected by reason of a defect or imperfection in matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

Under these statutory provisions we are disposed to follow a line of cases which hold that the ownership of the money obtained need not be stated by a direct allegation, if facts are alleged which sufficiently show the ownership. State v. Knowlton, 11 Wash. 512, 39 Pac. 966; State v. Boon, 49 N. C. 463; People v. Skidmore, 123 Cal. 267, 55 Pac. 984; State v. Balliet, 63 Kan. 707, 66 Pac. 1005; People v. Monroe (Sup.) 71 N. Y. Supp. 803. In State v. Boon the court, while admitting that in an indictment for larceny it is necessary to aver the ownership of the articles stolen, held that in an indictment for obtaining by false token the averment of an intent to so defraud a particular individual out of the property obtained "does identify it, and secures the same certainty as the averment in an indictment for larceny that the article is the property of a particular individual and affords an equal protection against another indictment."

The indictment in the present case alleged that the false pretenses were used with intent to defraud F. T. Merritt and obtain from him the sum of $875, and that by such false pretenses the defendants induced Merritt to purchase from them an undivided one-fourth interest in a certain placer mining claim, and that, relying on said false pretenses and representations, he paid to the defendants the said sum of $875 as part purchase price of said interest. This clearly and dis-

tinctly sets forth the crime in such a manner as to enable a person of common understanding to know what was intended and whose money was obtained, and there is no omission or defect which tends to prejudice the substantial rights of the plaintiff in error. Mere technical defects in criminal pleadings, which do not go to the substance of the accusation or prejudicially affect a substantial right of the accused, ought to be disregarded in an appellate court.

Error is assigned to the refusal of the court to permit counsel for the plaintiff in error to show that certain jurors had formed opinions as to the guilt or innocence of Duncan, who was jointly indicted with the plaintiff in error. But the rule is well settled that one is not an incompetent juror merely because he has formed and expressed an opinion as to the guilt of a person jointly indicted with the defendant. The objection can be urged only by the party against whom the opinion has been formed or expressed. 24 Cyc. 291; State v. Benton, 2 Dev. & B. Law (N. C.) 196; Lambright v. State, 34 Fla. 564, 16 South. 582; Weston v. Commonwealth, 111 Pa. 251, 2 Atl. 191; State v. Bill, 15 La. Ann. 114; State v. Bunger, 14 La. Ann. 465; Peddy v. State, 31 Tex. Cr. R. 547, 21 S. W. 542; Pierson v. State, 21 Tex. App. 14, 17 S. W. 468; Thompson v. State, 19 Tex. App. 593.

Several assignments of error challenge the rulings of the trial court in admitting evidence of conversations between Merritt and Duncan, not in the presence of the plaintiff in error, and between Merritt and one Watson, who was the agent of both Duncan and the plaintiff in error. The evidence so admitted tended to show that, some time prior to the commission of the act charged in the indictment, the plaintiff in error and Duncan had entered into a general scheme to defraud by the use of false statements of a discovery of gold on Midas creek and by exhibiting gold dust which they falsely stated was obtained there. There was no evidence in the case that the plaintiff in error made false representations to Merritt prior to the latter's purchase of an interest in the alleged mining claim, or was present when Duncan made such false representations. The prosecution was permitted to show that, at the time when Duncan obtained the money of Merritt, he (Duncan) had a power of attorney from the plaintiff in error to sell his interest in the fictitious mining claim, and that prior to that time the plaintiff in error had himself made to others representations similar to those which Duncan made to Merritt, and that he and Duncan had obtained money from others on such representations, and that subsequent to that time the plaintiff in error made false statements to Merritt as to the value of the interest which he had purchased. There can be no doubt of the admissibility of the evidence so objected to, for the case comes within the exceptions to the general rule that it is inadmissible to show that the accused has committed or attempted to commit another crime wholly independent of that for which he is on trial. That rule does not apply where the evidence of the other crime or attempt tends directly to prove the defendant guilty of the crime charged, or where the evidence tends to show his guilty knowledge or criminal intent. "Where the crime charged is part of a plan or system of criminal

action, evidence of other crimes near to it in time and of similar character is relevant and admissible to show the knowledge and intent of the accused, and that the act charged was not the result of accident or inadvertence." 12 Cyc. 411, and cases there cited.

It is contended that the trial court erred in refusing to instruct the jury that, before they could convict the plaintiff in error, they must find from the evidence that he received some part of the money. The instruction was properly refused. The fact that one of two or more persons who obtain property by false pretenses receives no share of the property is no defense. 19 Cyc. 417; State v. Davis, 56 Kan. 54, 42 Pac. 348.

Nor was there error in refusing to instruct the jury that under an indictment for obtaining money by false pretenses, the representations made must have been such as were calculated to induce a prudent man, relying upon them, to part with his money. In Indiana, and perhaps in one or two other states, it is held that the question whether the representations and pretenses set forth in the indictment were calculated to induce a prudent person to part with his money is for the jury to determine. But the overwhelming weight of authority is otherwise, and the better rule is that it is for the jury to say whether the representation was calculated to deceive, not a prudent person, but the person to whom it was made. 19 Cyc. 405, and cases there cited.

Counsel for plaintiff in error proffered an instruction on the subject of reasonable doubt. The court declined to instruct as requested, and on that subject instructed the jury as follows:

"The defendant is presumed to be innocent until he is proved guilty by the evidence before you beyond a reasonable doubt. By reasonable doubt is not meant any doubt or conjecture which may occur to your mind, or may be imagined by you; but it is a doubt which must arise from the evidence, or lack of evidence, and for which some reason can be given."

Error is assigned both to the refusal to charge as requested and to the charge as given; but the only question to be determined here is whether there is reversible error in the instruction which was given. In Owens v. United States, 130 Fed. 283, 64 C. C. A. 529, in reversing the judgment of the trial court for error in a certain instruction, this court thought it proper to suggest that the following definition of "reasonable doubt," given to the jury by the court below, should be omitted on a new trial:

"A reasonable ground of doubt is one which is reasonable from the evidence or want of evidence. It must be a ground of doubt for which a reason can be given, which reason must be based upon the evidence or want of evidence."

And this court remarked:

"A doubt arising out of evidence is a mental operation for which it may often be very difficult, and indeed impossible, to assign any reason, and yet, if honestly entertained by the jury in a criminal case, must be acted upon; for they are only authorized to bring in a verdict of guilty when satisfied and convinced beyond a reasonable doubt of the guilt of the accused. Such a doubt has been often and correctly defined as a doubt which is reasonable in view of all of the evidence, and such as arises upon an impartial comparison and consideration of all of it, and prevents the jury from being able candidly

and truthfully to say that they have an abiding conviction of the defendant's guilt."

It will be observed that this court, while disapproving the phraseology of the instruction, carefully refrained from expressing the opinion that it was ground for reversing the judgment then under consideration. In the definitions of "reasonable doubt" there is hopeless confusion in the adjudicated cases. Definitions approved in some courts have been held reversible error in others. The difficulty lies in explaining words which perhaps define themselves better than can be done by any paraphrase or elucidation. Said Mr. Justice Woods in Miles v. United States, 103 U. S. 312, 26 L. Ed. 481:

"Attempts to explain the term 'reasonable doubt' do not usually result in making it any clearer to the minds of the jury."

The definition which was given by the court below in the present case was given in substance by Chief Justice Waite in United States v. Butler, 1 Hughes (U. S.) 457, Fed. Cas. No. 14,700, and has been sustained in a number of cases, and, among others, in the following federal decisions: United States v. Stevens, 2 Hask. (U. S.) 164, Fed. Cas. No. 16,392; United States v. Johnson (C. C.) 26 Fed. 682; United States v. Jackson (C. C.) 29 Fed. 503; United States v. Jones (C. C.) 31 Fed. 718; United States v. Cassidy (D. C.) 67 Fed. 782. The objection to that definition lies in the danger of conveying the impression to the jurors that the reason for the doubt must be one that can be expressed in words. For this reason it has been rejected in a number of jurisdictions. In others, with better reason, we think, it has been disapproved, but held not to constitute reversible error. State v. Sauer, 38 Minn. 438, 38 N. W. 355; People v. Stubenvoll, 62 Mich. 329, 28 N. W. 883; State v. Morey, 25 Or. 241, 35 Pac. 655, 36 Pac. 573. And we so hold in the present case.

The judgment is affirmed.

ROSS, Circuit Judge. I dissent. That no one can be legally convicted of a crime, but by the unanimous verdict of 12 jurors upon evidence which satisfies their minds of the guilt of the defendant beyond a reasonable doubt, will not be disputed. It necessarily results that, when the court undertakes to instruct the jury as to what a reasonable doubt is, it is essential that it do so correctly. In the present case the trial court instructed the jury that such a doubt is one "for which some reason can be given." I am aware that some appellate courts have sustained a similar instruction; but in the case of Owens v. United States, 130 Fed. 283, 64 C. C. A. 529, we said, and I think correctly said, that:

"A doubt arising out of the evidence is a mental operation for which it may often be very difficult, and indeed impossible, to assign any reason, and yet, if honestly entertained by the jury in a criminal case, must be acted upon; for they are only authorized to bring in a verdict of guilty when satisfied and convinced beyond a reasonable doubt of the guilt of the accused."

Upon the ground here indicated, I think the judgment should be reversed, and a new trial awarded.